# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KATHY DOLLENS, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) No. 12-04271-CV-W-FJG |
| | ) |
| UNITED RENTALS (NORTH AMERICA), | ) |
| INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is United Rentals' Motion for Summary Judgment (Doc. # 60) and United Rentals' Motion for An Order Enjoining the Prosecution of State Suit (Doc. # 86).

### I.   BACKGROUND

Plaintiff, who is a Missouri resident, originally filed this cause of action in the Circuit Court of Boone County, Missouri on August 27, 2012. Defendant RSC Equipment Rental, Inc., ("RSC"), is an Arizona corporation, with its principal place of business in Arizona[1]. In 2012, United Rentals, Inc., the holding company of United Rentals (North America), Inc., purchased the stock of RSC Holdings, Inc. the holding company for RSC, and RSC was merged out of existence.

In September 2004, RSC purchased a new 2004 Skyjack scissor lift. On August 29,

---

[1] In its Answer to plaintiff's Complaint, defendant RSC states that it is now known as United Rentals (North America) Inc. United Rentals is a Delaware corporation with its principal place of business in Connecticut.

2007, RSC delivered the Skyjack scissor lift to the Kraft Foods plant in Columbia, Missouri. Plaintiff, Kathy Dollens was employed by Kraft. Her job duties at Kraft required her to operate one of several scissor lifts at the plant, five or six times a year. On November 25, 2008, the date of the accident, plaintiff was cleaning a hallway fan at the Kraft plant. When plaintiff first approached the lift, she observed that the steps were in poor condition, but she thought she could work safely on them. On November 25, 2008, plaintiff went up and down the stairs of the lift four or five times without falling. On her last trip down the lift, she fell or slipped from the lift and injured her right knee and broke her right wrist.

RSC does yearly inspections of the equipment which it owns and rents to customers such as Kraft. In 2008, it was the RSC mechanic's job to inspect the lift. On August 1, 2008, RSC's mechanic repaired a steel cylinder on the Scissor Lift, but did not charge Kraft for the repair. RSC employee, Byron Fulkerson performed maintenance on the lift in question, three weeks before plaintiff was injured. The work order prepared by Mr. Fulkerson does not reference any information about the damaged steps on the Lift. According to the rental agreement between RSC and Kraft, the customer is responsible for repair to the equipment if it causes damage to it. RSC is not aware of any documentation that Kraft ever paid RSC for any repairs to the Lift. RSC is not aware of charging Kraft for the repair or replacement of the steps for the lift. There is no documentation of any repair or replacement to the steps of the Lift from 2006 through 2009 according to the maintenance history, which covers all repair orders, maintenance orders and machine inspections from 2006 through 2009. Plaintiff's Exhibit 16 is a photograph which shows the steps on the lift

2

shortly after the accident. If these steps appeared in this condition during a routine inspection or repair of a lift, an RSC mechanic should have noted the condition and had the steps replaced. Plaintiff testified that she was not given any direction from anyone at Kraft about how to report a problem or damage to a lift.

In her first state court petition, Plaintiff asserts two claims: Count I – Strict Liability – Defective Manufacture/Design. Plaintiff alleges that the lift was defectively manufactured/designed to be unreasonably dangerous because it had a defective and/or broken step which was not of sufficient strength or size and/or not properly placed to prevent a user from slipping or falling. In Count II plaintiff asserts that defendant negligently supplied a chattel to be used for business. Plaintiff asserts in this count that the lift had a defective or broken step which was not of sufficient size or strength and/or properly placed to prevent a user from slipping and or falling. She alleges that prior to her fall, RSC knew of this condition or in the exercise of ordinary care could have known of this condition.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts

showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

### III. DISCUSSION

#### A. United Rentals' Motion for Summary Judgment

##### 1. Count I - Strict Liability

Defendant argues that it is entitled to summary judgment on the strict liability claim because in order to prevail, plaintiff must show that 1) defendant sold the product in the course of its business; 2) the product was then in a defective condition and unreasonably dangerous; 3) the product was used in a manner reasonably anticipated and 4) plaintiff was injured as a direct result. Heaviside v. Rental Service Corp., No.4:05CV2343CDP, 2007 WL 2156302, *3 (E.D.Mo. July 24, 2007). Defendant argues that plaintiff must show that neither she nor a third party made alterations to or otherwise damaged the product and if she cannot, then she cannot recover under a strict liability theory. Defendant argues that it is undisputed that the Lift was in good order and repair and the steps were not broken, damaged or in an

4

otherwise defective condition at the time RSC delivered the lift to Kraft in 2007. In support of this assertion, defendant cites to the affidavit of Matthew Brunk. In his affidavit Mr. Brunk states only that it was the "custom and practice of RSC at its Columbia, Missouri facility in 2006, when renting used equipment like the 2004 Skyjack scissor lift at issue in this case . . .to only rent such equipment in a state of good condition, and without any visible damage or known defects or dangerous conditions." (Exh. 3 Brunk Affid. ¶ 5). Defendant also argues that plaintiff cannot produce evidence showing that the steps were not modified or otherwise not damaged by other Kraft employees after it left RSC's possession.

In opposition, plaintiff acknowledges that it is her burden to prove that the Scissor Lift was in substantially the same condition at the time of her injury as when it was rented to Kraft. Fahy v. Dresser Industries, Inc., 740 S.W.2d 635, 639 (Mo.banc. 1987). She argues that there is no documentation that Kraft did any maintenance or repairs to the Lift from the time it was delivered in August 2007, through November 25, 2008, the date of the accident. In his deposition, Steve Tuttle testified:

Q. And what I asked is: There's no reference to any repair or replacement of the steps on this machine in the '06 through '09 time period; correct?
A. Correct.
Q. And this document, Exhibit 21, covers all the repair orders, maintenance orders for that machine for those 3 years; correct?
A. Correct.

(Plaintiff's Exh. 1, p. 43).

Plaintiff also states that Kraft was not charged or billed by RSC for any damage or repairs to the Scissor Lift's steps during the time that the lift was at the Kraft plant. If a customer damages a piece of RSC's equipment, there would be a work order for repair of the equipment and customer would be charged. Mr. Tuttle again testified:

5

Q. So, sir, again, um, in the time period of August of 2007 until November of '08, are you aware of any work order where Kraft charged – or where Kraft was charged by RSC for RSC doing any work on replacing or repairing or removing for service to do so the steps on the lift involved?
A. No.
Q. Have you seen any documentation in this case whatsoever that Kraft in any way damaged the steps on the lift involved from August of '07 through November of '08?
A. No.

(Plaintiff's Exh. 1, p. 53).

Kraft also has no record of any damage to the steps of the lift from the time of delivery to the date of the accident. Eric Stanek, the Safety, Security and Environmental Manager for Kraft, stated in his affidavit: "Kraft has no documentation of any damage reported, observed, or occurring to the Scissor Lift's steps from the date of its delivery on 8/29/07 to November 25, 2008, the date Kathy Dollens was injured. Kraft was not charged or billed by United Rentals f/k/a RSC for any alleged damage to the Scissor Lift's steps, or any repair to the Scissor Lift's steps, during the time the Scissor Lift was at Kraft, at any time, including up to the present. Kraft did not perform any repairs or make any alterations to the Scissor Lift's steps, or any other part of the Scissor Lift, from the time it was delivered to Kraft on 8/29/07 to the time it was removed from Kraft on 12/18/08." (Plaintiff's Exh. 10, ¶¶ 5-7). Additionally, RSC is not aware of any documentation, such as a checklist, that it provides when it delivers used equipment for rental purposes to clients such as Kraft. (Plaintiff's Exh. 6, Brunk Depo. p. 79). United Rentals also is not aware of any photographs of the Lift showing its condition at the time it was rented to Kraft. (Id., Brunk Depo. p. 79). Plaintiff states that this evidence shows that the condition of the lift was not substantially changed from the time it was delivered until the date of the

accident and thus this is a question for the jury to decide. After reviewing the parties' briefs and arguments, the Court finds that there are disputed facts regarding what condition the lift was in when it was delivered and whether the steps were damaged at any time between the date of delivery and the date of the accident. Therefore, because there are disputed issues of fact regarding the strict liability claim, the Court hereby **DENIES** United Rentals' Motion for Summary Judgment on this claim.

### 2. Count II - Negligence

In order to recover under a negligence theory, plaintiff must show 1) lessor supplied the equipment; 2) equipment was defective or hazardous and was dangerous when put to a reasonably expected use; 3) the equipment was put to a reasonably expected use; 4) the rental company had no reason to believe that the user of the equipment would realize the danger; 5) the rental company knew or had information from which it, in the exercise of ordinary care, should have known of such dangerous condition, 6) the rental company failed to adequately warn of such condition; 7) the rental company was thereby negligent and 8) as a direct result of such negligence, the user sustained damage. Heaviside, 2007 WL 2156302 at *4.

Defendant argues that the facts show that the lift was in good condition when it was rented, and that Kraft never notified RSC about any damage or requested that the steps be repaired or replaced. Because plaintiff cannot show that the lift was defective at the time it was rented to Kraft, she cannot recover under the negligence theory. Defendant also argues that under Missouri law, a lessor is not liable to a third person for injuries from open and obvious defects in leased equipment. United

7

Rentals argues that the record is clear that plaintiff was fully aware of and accepted the condition of the steps before she used them.

In Cramer v. Maren Engineering Corp., No.4:08CV840DDN, 2009 WL 3434102 (E.D.Mo. Oct. 19, 2009), the Court stated:

> The extent of a manufacturer's duty to protect against a dangerous product depends on the nature and character of the defect, and on the plaintiff's knowledge of such a defect . . . [T]he manufacturer may be held liable if the defect or danger is latent or concealed, but where the danger is open, obvious and apparent, or the user has actual knowledge of the defect or danger, there is no liability on the manufacturer. . . .The open and obvious limitation primarily concerns those dangers that are visible. . . Whether a manufacturer owes the plaintiff any duty to protect is a question of law, reserved for the court.

Id. at 14 (internal citations and quotations omitted).

Plaintiff argues in opposition that if the "open and obvious" doctrine applied to the negligence allegations in this case, there is a genuine issue of material fact that RSC should have anticipated harm to those using the damaged lift. Plaintiff states that in a case where the plaintiff is at fault for failing to protect themselves from an open and obvious danger, but the defendant is also guilty of negligence, then the jury should decide the case on the basis of comparative fault.

In Sperberg v. Lion Apparel, Inc., No. 03-3118-CV-W-FJG, 2004 WL 5501182, (W.D.Mo. Aug. 4, 2004), the Court stated:

> [a] negligent design or manufacture claim requires the defendant manufacturer exercise that degree of skill and learning ordinarily used by an expert in the defendant's business under the same or similar circumstances. . . .*No duty* is owed where the alleged defect in the product is open and obvious to the likely consumer when put to its expected use.

Id. at 12 (emphasis added). Similarly, in Morrison v. Kubota Tractor Corp., 891 S.W.2d 422 (Mo.App. 1994) the Court stated, "while the manufacturer could be held

liable if the defect or danger was latent or concealed, it was *not* liable where the danger is open, obvious and apparent, or the user has actual knowledge of the defect or danger." Id. at 426 (internal citations and quotations omitted) [2].

In the instant case, plaintiff readily admitted that she knew the condition of the stairs. In her deposition, she testified:

Q. Have you ever been given any instructions or direction from anybody at the Kraft plant to report problems or damage with a scissor lift that you're operating?
A. No. Whatever is there we use.
Q. So if there's something damaged on a scissor lift, you don't report it, you just use it?
A. Yeah. Because it's – like the one that I was on had been in that shape six months to a year before. It had just been like that. Everybody had used it.
. . .
Q. Okay. And when you walked up the steps, I assume you saw the condition of the steps?
A. Yes.
Q. Okay.
A. But I knew they were in bad shape, and I thought I could work safely on them.
Q. But you used the scissor lift knowing their condition?
A. Yes.

(Defendant's Exh. 4, Plaintiff's Depo.pp. 25, 29).

Thus, because the nature of the steps on the scissor lift were open and obvious and plaintiff admitted that she knew of their condition before using the lift, the Court finds that plaintiff's negligence claim is barred by the open and obvious doctrine. Accordingly, the Court hereby **GRANTS** defendant's Motion for Summary Judgment on Count II, the Negligence claim.

---

[2] Plaintiff appears to be confusing what is permitted in strict liability claims and in negligence claims. In Sappington v. Skyjack, Inc., 512 F.3d 440 (8th Cir.2008), the Court explained that "[t]he holding of Morrison [v. Kubota Tractor Corp.], however, was specifically limited to *negligence* claims. . . Since Morrison, the court of appeals has confirmed the open and obvious nature of a hazard *does not* bar recovery by a plaintiff in a strict products liability claim, but may be considered in apportioning fault." Id. at 447(emphasis added).

**B. Motion to Enjoin State Proceedings**

On July 18, 2013, plaintiff's counsel deposed Byron Fulkerson, the mechanic who worked on the lift shortly before plaintiff's accident. On July 26, 2013, plaintiff filed a motion for leave to amend, seeking to add Mr. Fulkerson, as a non-diverse defendant. The Court entered an Order denying the motion for leave to amend, and stated in a footnoted that plaintiff could seek leave to amend to assert a claim against United Rentals for the actions of Mr. Fulkerson. On October 25, 2013, plaintiff filed a motion for leave to amend, seeking to add a count of negligence against defendant for the actions or omissions of Mr. Fulkerson. Before the Court ruled on the Motion to Amend, plaintiff's counsel filed a motion to withdraw the motion on November 21, 2013. On November 19, 2013, plaintiff's counsel filed a second suit on behalf of Dollens in Boone County, Missouri involving the same facts. The second suit named United Rentals, Inc., United Rentals (North America) Inc. and Byron Fulkerson as defendants. United Rentals had initially filed a Motion to Enjoin the Prosecution of this State Court Suit. However, counsel for defendant has recently notified the Court that the judge in the Boone County suit has granted a joint motion to stay all proceedings in that case pending disposition of all claims in this case. Defendant states that the Motion to Enjoin is now moot. Accordingly, the Court hereby **DENIES AS MOOT** the Motion to Enjoin Prosecution of the State Court Suit (Doc. # 86).

## IV.    CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES** defendant's Motion for Summary Judgment on Count I – Strict Liability claim; **GRANTS** defendant's

10

Motion for Summary Judgment on Count II – Negligence claim (Doc. # 60) and **DENIES AS MOOT** defendants' Motion to Enjoin Prosecution of the State Court Suit (Doc. # 86).

Date: <u>February 21, 2014</u>             **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                 Fernando J. Gaitan, Jr.
                                                     United States District Judge